Case: 13CI1:20-cv-00205   Document #: 5   Filed: 01/15/2021   Page 1 of 12

IN THE CIRCUIT COURT OF CLAY COUNTY, MISSISSIPPI

ROYAL TRUCKING COMPANY          PLAINTIFF

V.          CIVIL ACTION NO. 20-cv-205

DALKO RESOURCES, INC. and          DEFENDANT
KANSAS CITY SOUTHERN RAILWAY
COMPANY.

## AMENDED COMPLAINT
### (Jury Trial Requested)

COMES NOW Plaintiff, ROYAL TRUCKING COMPANY, by and through counsel, and files this Complaint against Defendant, DALKO RESOURCES, INC. and KANSAS CITY SOUTHERN RAILWAY COMPANY, and would show the following in support hereof:

## PARTIES

1. Plaintiff, ROYAL TRUCKING COMPANY ("ROYAL"), is a domestic corporation with its principal place of business at 1312 Industrial Access Road, West Point, Mississippi 39773.

2. ROYAL is a licensed motor carrier authorized to transport property in interstate commerce pursuant to grant of authority from the Federal Motor Carrier Safety Administration Docket No MC-147747.

3. Defendant, DALKO RESOURCES, INC. ("DALKO"), is a foreign corporation with, upon information and belief, its principal place of business at 99 Canal Street, Sharpsville, Pennsylvania 16150. DALKO may be served through its registered agent, Lawrence J. Roberts, 249 Catalonia Avenue, Coral Gables, Florida 33134.

4. DALKO is a licensed freight forwarder and broker pursuant to grant of authority from the Federal Motor Carrier Safety Administration ("FMSCA"), Docket No. FF-3595 and MC-


EXHIBIT A

436082, respectively, and among other services, arranges for transportation of cargo by motor carrier in interstate commerce.

5. At all times material, DALKO regularly arranged for the transportation of goods with motor carriers, like ROYAL, based in Mississippi, arranged for the transportation of goods in interstate commerce in Mississippi, conducted substantial business in Mississippi, and the claims raised herein arose out its contacts with ROYAL in Mississippi.

6. Defendant, KANSAS CITY SOUTHERN RAILWAY COMPANY ("KCSR") is a foreign corporation with, upon information and belief, its principal place of business at 427 W. 12th Street, Kansas City, Missouri. KCSR may be served through its registered agent, CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

7. KCSR owns, controls, and operates a railroad running across several states, including Mississippi.

8. Specific personal jurisdiction over DALKO in the State of Mississippi is proper under the Mississippi Long Arm Statute and constitutional minimum contacts because DALKO committed the tortious acts complained of in Mississippi and entered the contracts alleged in Mississippi.

9. Specific personal jurisdiction over KCSR in the State of Mississippi is proper because KCSR conducts business in Mississippi, operates railroad tracks throughout Mississippi, and entered the contract alleged in Mississippi.

**JURISDICTION**

10. The Circuit Court of Clay County, Mississippi has jurisdiction over the matter hereto and the parties thereof.

## VENUE

11.     Venue is proper in the Circuit Court of Clay County, Mississippi because Clay County is where the causes of action against DALKO and KCSR accrued and where the damages to ROYAL accrued and continue to accrue.

## STATEMENT OF FACTS

12.     On the morning of December 28, 2017, DALKO acting in its role as a broker and as an intermediary between ROYAL and KCSR, had contact with ROYAL via email and telephone at its facility in West Point, Mississippi to ascertain whether ROYAL was able to haul cargo from the facility of Orgo-Thermit Inc. in Manchester, New Jersey to KCSR's location in Vivian, Louisiana.

13.     On December 28, 2017 and for many consecutive years prior, DALKO was the sole logistics provider for KCSR, meaning that DALKO was the sole broker responsible for facilitating the transport by motor carrier of freight supporting KCSR's operations.

14.     As a broker and intermediary between ROYAL and KCSR, DALKO owed a duty to ROYAL to disclose the nature of the cargo that it was asking ROYAL to haul for the benefit of KCSR. More specifically, DALKO owed a duty to ROYAL, *inter alia*, to advise ROYAL if the cargo could be a danger to the public or a danger to the environment if the cargo were spilled. Further, DALKO owed a duty to ROYAL, *inter alia*, to advise ROYAL of the nature, extent and/or cost of any environmental cleanup or restoration in the event the cargo was spilled. KCSR owed to Royal the same duty of disclosure as principal of Dalko, its agent, and consignee on the bill of lading.

15.     As motor carrier with responsibilities for the safety of the public as to its operations and the protection of the environment related to the loads it hauls for its broker and shipper clients,

ROYAL had a right to be fully advised by DALKO of the nature of the cargo that DALKO wished for ROYAL to haul on behalf of KCSR so that ROYAL could make an informed decision of whether to haul the cargo, to haul the cargo only under specified conditions, or whether to outright decline hauling the cargo.

16. As a broker and intermediary between ROYAL and KCSR, DALKO described the cargo to ROYAL only as weld kits. A true and correct copy of the rate confirmation sheet is attached hereto as Exhibit 1. The full and correct version of the uniform straight bill of lading issued in this matter is in the possession of KCSR and/or DALKO. A portion of the uniform straight bill of lading is attached hereto as Exhibit 2.

17. The rate confirmation sheet (Exhibit 1) and the bill of lading (Exhibit 2) described the cargo only as "weld kits" and showed the origin point as Orgo-Thermit, Inc.'s facility in Manchester, New Jersey and the destination as KCSR's facility in Vivian, Louisiana. The rate confirmation sheet also specified DALKO's instruction that the weld kits be hauled only by flatbed trailer. The requirement that a flatbed trailer be used to haul the cargo had been previously disclosed to ROYAL by DALKO, which was for the convenience of KCSR during the unloading process at its facility.

18. In its role as KCSR's sole logistics provider and agent of KCSR, DALKO regularly, for a period of many consecutive years, arranged for the transport by motor carrier of the "weld kits" from the Orgo-Thermit, Inc.'s facilities to various locations associated with KCSR.

19. In its discussions with DALKO leading up to ROYAL's acceptance of cargo and its agreement to transport the cargo as specified above, DALKO asked ROYAL for a copy of its insurance declarations. A true and correct copy of the insurance declaration provided by ROYAL to DALKO is attached hereto as Exhibit 3.

20. The insurance declaration (Exhibit 3) shows the types of coverages, with limits of coverage, carried by ROYAL as of December 28, 2017. The insurance declaration does not reflect any coverage for environmental cleanup or restoration in the event cargo is spilled.

21. Based upon DALKO's representations as a broker and intermediary between ROYAL and KCSR, and the agent of KCSR, ROYAL agreed to accept the cargo and transport it as specified, including the requirement to haul the cargo with a flatbed trailer.

22. ROYAL reasonably believed that the cargo did not pose a danger to the public or to the environment if spilled because DALKO, who knew or should have known of the nature of the cargo, did not disclose any such dangers to ROYAL.

23. ROYAL reasonably believed the cargo posed no danger to the environment or to the public in the event of a spill.

24. ROYAL picked up the cargo as instructed by DALKO.

25. Just prior to its destination, the cargo was spilled because of an accident on a right of way owned by KCSR. The accident was the result of a collision between the flatbed trailer being hauled by ROYAL's driver and a locomotive operated by KCSR.

26. Kansas City Southern Railway engaged a vendor to pick up the spilled cargo and related debris ("debris"), some of which was in powder-like form, which had been strewn across hundreds of yards of the right of way owned by KCSR.

27. KCSR engaged vendors to dispose of the debris cleaned up from along the right of way at a total cost, according to KCSR, of more than $500,000.00.

28. KCSR has sued Royal in the United States District Court for the Western District of Louisiana for, *inter alia*, the above-referenced cleanup and disposal charges, cargo loss damages, and damages to its locomotive in the collision.

29. ROYAL has incurred significant costs in the defense of KCSR's clams.

30. ROYAL did not learn of the true nature of the cargo until after the spill had occurred. More specifically, after the spill, ROYAL learned that the welding kits contained, *inter alia*, products with Materials Safety Data Sheets ("MSDS"). MSDS are published so that workers and others who handle or transport such products will understand the safe handling, storage and use of such products as well as what health hazards the products may cause in the event of exposure, what hazards the products may cause to the environment in the event of a spill, and what cleanup measures should be use and not be used when handling or transporting the products.

31. On information and belief, DALKO chose not to provide the MSDS to ROYAL to ensure Royal would accept the load on short notice.

32. After the above-referenced collision occurred, ROYAL learned one of the products comprising part of the cargo with a MSDS sheet was Rail Welding Thermit ("Thermite"). Thermite is an aluminum and iron oxide compound used, *inter alia*, as a welding material in the process of installing and repairing railroad ties. If it is ignited, Thermite burns at approximately 4500 degrees Fahrenheit and cannot be extinguished with water. In fact, attempting to extinguish a Thermite reaction with water will cause a steam explosion with serious risk of injury to persons and property.

33. ROYAL had no knowledge that Thermite was part of the weld kits and DALKO did not disclose it to ROYAL, despite its duty to do so.

34. Prior to ROYAL's acceptance of the cargo, DALKO, *inter alia*, had a duty to disclose to ROYAL the products making up the weld kits had MSDS sheets, had a duty to provide the MSDS sheets to ROYAL, had a duty to advise ROYAL that Thermite was part of the weld kits, and/or had duty to ROYAL to disclose the characteristics of Thermite.

35. Prior to ROYAL's acceptance of the cargo, DALKO had a duty, *inter alia*, to ensure that ROYAL had adequate insurance coverage to protect ROYAL from a claim associated with a spill of the cargo.

36. Had DALKO not breached the above-referenced duties, ROYAL would not have accepted the cargo, the subject collision and spill would have never occurred, the cleanup and environmental restoration costs incurred by Kansas City Southern Railway would not have been incurred, Kansas City Southern Railway would not have made a claim against ROYAL, and ROYAL would not have incurred the fees and expense it has incurred and will incur in defense of those claims. Further, ROYAL would not be threatened with the prospect of a judgment against it in favor of Kansas City Southern Railway, in the event that Kansas City Southern Railway is successful in its lawsuit against ROYAL.

37. All conditions precedent to the bringing or maintenance of this action have occurred or been waived.

## COUNT I
## NEGLIGENCE AS TO DALKO

38. ROYAL realleges paragraphs 1 through 37 as though fully set forth herein.

39. DALKO owed the duties to ROYAL set forth above.

40. DALKO breached those duties to ROYAL.

41. ROYAL has suffered and continues to suffer damages as a proximate result of DALKO's breaches.

## COUNT II
## NEGLIGENT MISREPRESENTATION AS TO DALKO

42. ROYAL realleges paragraphs 1 through 41 as though fully set forth herein.

43. DALKO misrepresented the nature of the cargo and/or omitted facts regarding the cargo, including without limitation omitting the fact that the cargo was comprised of products with MSDS sheets and omitting the fact that the cargo contained Thermit, which has, *inter alia*, the characteristics set forth above.

44. The misrepresentations or omissions were material and/or significant because if the nature of the cargo had been explained to ROYAL, ROYAL would not have accepted the cargo.

45. DALKO failed to exercise the degree of diligence and expertise that ROYAL, as the intermediary between ROYAL and KCSR, was entitled to expected from it.

46. ROYAL reasonably relied upon DALKO's representations concerning the cargo.

47. ROYAL has suffered and continues to suffer damages as a proximate result of DALKO's misrepresentations and/or omissions.

## COUNT III
## BREACH OF CONTRACT AS TO DALKO

48. ROYAL realleges paragraphs 1 through 47 as though fully set forth herein.

49. The rate confirmation sheet (Exhibit 1) was the contract between ROYAL and DALKO.

50. DALKO breached the contract.

51. As a result of the breach, ROYAL has suffered damages and will continue to suffer damages.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DALKO

52. ROYAL realleges paragraphs 1 through 51 as though fully set forth herein.

53. The rate confirmation sheet (Exhibit 1) was the contract between ROYAL and DALKO.

54. The contract contained a covenant of good faith and fair dealing.

55. DALKO breached the covenant of good faith and fair dealing.

56. As a result of the breach, ROYAL has suffered damages and will continue to suffer damages.

## COUNT V
## COMMON LAW INDEMNITY AS TO DALKO

57. ROYAL realleges paragraphs 1 through 56 as though fully set forth herein.

58. Due to the actions and omissions of DALKO, ROYAL has, *inter alia*, become legally obligated to pay its attorneys to defend it in the action brought against ROYAL by KCSR and may become liable for damages to KCSR.

59. ROYAL did not actively or affirmatively participate in the wrong, as it was DALKO that mispresented, by act or omission, the nature of the cargo.

60. DALKO is liable for the attorney's fees that ROYAL has expended and will expend in the litigation commenced against ROYAL by KCSR.

61. DALKO is liable for any amount awarded to KCSR against ROYAL in such litigation.

## COUNT VI
## BREACH OF CONTRACT AS TO DALKO AND KCSR

62. ROYAL realleges paragraphs 1 through 61 as through fully stated herein.

63. KCSR and DALKO entered into a contract with ROYAL comprised of the rate confirmation sheet (Exhibit 1) and the uniform straight bill of lading (Exhibit 2).

64. KCSR and DALKO breached the contract.

65. Further, by operation of law and fact, the uniform straight bill of lading incorporated Section 6, which states in pertinent part: "[e]very party, whether principal or agent, who ships explosives or dangerous goods, without previous full written disclosure to the carrier

of their nature, shall be liable for and indemnify the carrier against all loss or damage caused by such goods."

66. KCSR and DALKO failed to provide written disclosure to ROYAL as required.

67. After the accident referenced above, KCSR made demand upon and ultimately sued ROYAL for cleanup and disposal charges, cargo loss damages, and damages to its locomotive in the collision.

68. KCSR and DALKO, as principal and agent, failed to indemnify and/or hold ROYAL harmless resulting in a breach of the contract.

69. As a result of the breach, ROYAL has suffered damages and will continue to suffer damages.

## COUNT VII
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DALKO AND KCSR

70. ROYAL realleges paragraphs 1 through 69 as through fully stated herein.

71. The rate confirmation sheet (Exhibit 1) and the uniform straight bill of lading (Exhibit 2) was the contract between ROYAL, DALKO, and KCSR.

72. The contract contained a covenant of good faith and fair dealing.

73. DALKO and KCSR breached the covenant of good faith and fair dealing.

74. As a result of the breach, ROYAL has suffered damages and will continue to suffer damages.

## COUNT VIII
## CONTRACTUAL INDEMNITY AS TO DALKO AND KCSR

75. ROYAL realleges paragraphs 1 through 74 as through fully stated herein.

76. KCSR and DALKO entered into a contract with ROYAL comprised of the rate confirmation sheet (Exhibit 1) and the uniform straight bill of lading (Exhibit 2).

77. By operation of law and fact, the uniform straight bill of lading incorporated Section 6, which states in pertinent part: "[e]very party, whether principal or agent, who ships explosives or dangerous goods, without previous full written disclosure to the carrier of their nature, shall be liable for and indemnify the carrier against all loss or damage caused by such goods."

78. Due to the actions and omissions of DALKO, ROYAL has, *inter alia*, become legally obligated to pay its attorneys to defend it in the action brought against ROYAL by KCSR in Louisiana and may become liable for damages to KCSR.

79. KCSR and DALKO are liable for the attorney's fees that ROYAL has expended and will expend in the litigation commenced against ROYAL by KCSR pursuant to the bill of lading contract.

80. KCSR and DALKO are liable for any amount awarded to KCSR against ROYAL in such litigation and any judgment KCSR may obtain against Royal must be paid by KCSR and DALKO as indemnitors.

## DAMAGES

81. ROYAL realleges paragraphs 1 through 80 as through fully stated herein.

82. ROYAL restates this entire complaint.

83. ROYAL, as a direct and proximate result of the actions and omissions of DALKO and KCSR stated herein, has suffered damages in an amount exceeding $100,000.

84. Wherefore, ROYAL demands a judgment of, from, and against DALKO and KCSR in an amount within the jurisdictional limits of this Court, to be determined at the trial of this cause, plus interest from the filing date of this Complaint, and all costs of court.

RESPECTFULL SUBMITTED, this 15th day of January 2021.

                                      Respectfully submitted,

                                      ROYAL TRUCKING COMPANY

                                      By Its Attorneys,

                                      DunbarMonroe, PLLC

                                      */s/ Clark Monroe*
                                      Clark Monroe

OF COUNSEL:

G. Clark Monroe II (MSB #9810)
      gcmonroe@dunbarmonroe.com
Christopher G. Dunnells (MSB# 105029)
      edunnells@dunbarmonroe.com
*DunbarMonroe, PLLC*
270 Trace Colony Park, Suite A
Ridgeland, MS 39157
601-898-2073 Office
601-898-2074 Facsimile

**TRUCKLOAD DIVISION**

**RATE CONFIRMATION**

Pro #: 661293
12/28/17
09:28:17

**DALKO RESOURCES**

From : LISA MONTOZZI
(866) 707-4286 x 1137
(724) 962-4289 fax

To  : ROYAL TRUCKING      (662) 494-1637       MC # : 147747
Att : HERB x231            (662) 494-7263 fax  DOT # :
                                               TRUCK # :
PICKUP  : ORGO-THERMIT INC                     TRAILER # :
          3500 COLONIAL DR N                   DRIVER :
                                               DRIVER CELL :
          MANCHESTER NJ 08759                  P/U REF # : 35094
          (732) 657-5781 JOE  x 25             SIZE & TYPE : 48 ' FLATBED W/ TARPS
HOURS   : 2PM                                  DESCRIPTION : WELD KITS
SHIP DATE/TIME : 12/28/17 @                    PIECES : 26
APPT DATE/TIME :          @                    WEIGHT : 38685
                                               MILES  : 1394
* TEMP CONTROL @ *

FINAL DESTINATION  : KANSAS CITY SOUTHERN R
                     14800 HWY 1 SOUTH
                     VIVIAN LA 71082
                     (318) 375-4956  RECEIVING
HOURS : 7AM-2PM      REF #
DEL APPT DATE/TIME :               @ u

---[ DISPATCH NOTES ]---

LINE HAUL RATE  2850.00

FLATBED W/ TARPS VIVIAN CLOSED 12/25,12/28,12/29

TOTAL RATE  $ 2850.00

************DO NOT CALL PICKUP OR DELIVERY LOCATIONS FOR DIRECTIONS************
DALKO RESOURCES, INC. REQUIRES THE FOLLOWING DOCUMENTATION FOR PAYMENT:
1. INVOICE
2. BILL OF LADING (ORIGINAL BOL PREFERRED)
3. SIGNED PROOF OF DELIVERY
4. RATE CONFIRMATION SHEET
**QUICK PAY AVAILABLE, PLEASE CONTACT JIMMY @ EXT. 1106 FOR MORE INFORMATION**

Carrier Signature _____    TRUCKLOAD DIVISION
                                              P.O. BOX 98
Date 12-28-17 ____ / ____
SEND CARRIER BILLS TO ------------->>>        SHARPSVILLE PA 16150
Pro # 661293 MUST BE ON YOUR INVOICE

Reply #3



EXHIBIT 1

# STRAIGHT BILL of LADING

**DALKO RESOURCES, INC**
P.O. BOX 98
SHARPSVILLE PA 16150
(844) 468-8558
(866) 711-0297 Fax

Carrier : BILLED
Date : 12/28/17
Trailer # :
Pro # : 661293

| SHIPPER | CONSIGNEE | Additional Ref #'s |
|---|---|---|

ORGO-THERMIT INC
3500 COLONIAL DR N

MANCHESTER NJ 08759
(732) 657-5781
JOE X 25
Ref # SS03588

KANSAS CITY SOUTHERN R
14800 HWY 1 SOUTH

VIVIAN LA 71082
(318) 375-4956
RECEIVING
Ref #
Del Appt : u

| Pcs | HM | Kinds of Packaging, Description of Articles, Special Marks and Exceptions | Class | NMFC # | Weight |
|---|---|---|---|---|---|
| 26 | N | WELD KITS | | | 38685 |
| | | :ca :cb :cc | | | |

"Third Party Freight Prepaid"

Carrier Please Put
DALKO RESOURCES, IN Pro # 661293
on Your Invoice to Ensure Prompt Payment

Please fax copy of BOL to DALKO RESOURCES, INC   @ (866) 711-0297 after Pickup & Delivery

**** NOTE TO CARRIER **** ANY questions or problems with this call DALKO RESOURCES, INC    @ (844) 468-8558
NOTE : Liability limitation for loss or damage in this shipment may be applicable pursuant to an agreement between
the parties or under applicable law including, but not limited to, See 49 Section 101 et seq.

Subject to Section 7 conditions, if this shipment is to   Carrier acknowledges receipt of packages and required placards.
be delivered to the consignee without recourse on the    Carrier certifies emergency response information was made
consignor, the consignor shall sign the following        available and/or carrier has the DOT emergency response
statement:                                                guidebook or equivalent documentation in the vehicle. Property
The carrier shall not make delivery of this shipment     described about is received in good order, except as noted.
without payment of freight and all other lawful charges. Carrier/Driver                                       Pieces
Shipper  : ORGO-THERMIT INC                               Signature                                   Date  /    /
Signature                       Date  /    /              License Plate          Trailer #            MC #

                                                          Received subject to individually determined rates or contracts
This is to certify that the above named materials are    that have been agreed upon in writing between the carrier and
classified, marked and labeled and are in proper         shipper, if applicable, otherwise the rates, classifications
condition for transportation according to the applicable and rules that have been established by the carrier and are
regulations of the DOT.                                   available to the shipper, on request, and to all applicable
                                                          state and federal regulations.
Shipper  : ORGO-THERMIT INC                               Consignee : KANSAS CITY SOUTHERN R
Signature                       Date  /    /              Signature                                   Date  /    /

Reply # 2


EXHIBIT 2

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 5/31/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Farris Evans Insurance Agency, Inc.<br>1568 Union Avenue<br>Memphis TN 38174 0996 | PHONE (A/C, No, Ext): 901-274-5424 | FAX (A/C, No): | |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: ROYAL-1 | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED<br>Royal Trucking Company<br>P O Box 387<br>West Point MS 39773 | INSURER A: Cherokee Insurance Company | | 10642 |
| | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

**COVERAGES**     **CERTIFICATE NUMBER:** 115171840     **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | GL170057 | 6/1/2017 | 6/1/2018 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY / PRO-JECT / LOC | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | CA170101 | 6/1/2017 | 6/1/2018 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | HIRED AUTOS | | | | | | | $ |
| | NON-OWNED AUTOS | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | WC170066 | 6/1/2017 | 6/1/2018 | X WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| A | MOTOR TRUCK CARGO | | | MC170068 | 6/1/2017 | 6/1/2018 | $500,000<br>$1,000,000 | VEHICLE CATASTROPHE |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
$30,000 TRAILER INTERCHANGE (CHEROKEE INSURANCE CO. POLICY NO. CA170101 EFF 6/1/17-6/1/18)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Company<br>Address<br>City ST Zip | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2009 ACORD CORPORATION

ACORD 25 (2009/09)     The ACORD name and logo are registered marks of ACORD



EXHIBIT 3